Mr. Justice James
delivered the opinion of the Court:
In the case of Robert Balloch vs. William R. Hooper and the Massachusetts Mutual Life Insurance‘Company, the record sets forth a somewhat elaborate statement of fact and several questions of law, all of which were considered and discussed by counsel, but which it is not necessary, in the view we have of the case, for us to consider.
Briefly stated it appears that Balloch had purchased a tract of land in Washington, which was laid off in lots, with *424 a view to build a number of houses, and that he applied to the defendant insurance company for a loan, through Hooper, who was its agent for the loan of money. He obtained at three different times three loans upon certain conditions, one of which was that a part of the money was to be applied to the extinguishment of existing incumbrances, the main one being the purchase money due upon the property. The insurance company made these loans by sending the money to Hooper, who retained a part of it for the purpose of removing the incumbrances and, as it is stated in the answer, was to advance the rest as the buildings should advance. A certain portion of each loan was paid over by Hooper, but as Balloch avers not enough, after the application of some of the money to these incumbrances, to enable him to proceed rapidly with the buildings. During this period Balloch, for what reason we do not deem it material to consider, conveyed to Hooper the whole of the property which he had already mortgaged to secure the loan from the insurance company, and, in addition, six other lots which had not been included in the security. He alleges that there was a verbal agreement between Hooper and himself, that the deed though absolute on its face was to be infact a trust; that Hooper was to take the property and apply the money which had been thus far held back until the houses should be finished, and that they were then to be sold and the proceeds divided in certain proportions. On the other hand, Hooper denies the alleged verbal agreement and the insurance company denies ever having heard of it.
Whatever the agreement was it is manifest that the conveyance was in some way to stand as a security, because Balloch .conveyed to Hooper more than the land included in the trust to the insurance company. We think that transaction clearly indicates that there must have been a contract or understanding that this conveyance was to be regarded as some sort of security. Had Balloch’s purpose been merely to give up the enterprise he would not have *425 given, in addition to the property that was included in the deed of trust, these six lots. Bo far, then; as Hooper was concerned we are of opinion that his intention was to take this as security for Balloch’s debt. .Hooper sets up in his answer that he took this conveyance for the purpose of better securing the payment to the company, but there is nothing to show that the insurance company knew of that transaction at the time.
The answer of the company states that it did not know of it until a little more than seventeen months afterwards. The houses for some time after this last .conveyance still remained unfinished. Thereupon Hooper, being without the means to do so, applied to the insurance company to carry oil the building enterprise to completion. He undertook, if the company would supply him with the money, to step, as it were, into Balloch’s shoes'and finish the houses. The result was that the insurance company then agreed to- deliver up Balloch’s notes and execute releases of the deeds of trust on the property, and advance further moneys for the finishing of the work; all of which was accordingly done, the company taking Hooper’s note for $71,000 to secure its past and future advances. It appears that besides the money previously advanced to Balloch it cost some $20,000 to finish the houses. Balloch says the agreement was that they were to be finished on his account, and that this expenditure of $20,000 was greatly in excess of what the houses should have cost and. that he is entitled to an account and to have his agreement with Hooper carried out.
' Now, on such a transaction, what are the rights of the parties? It appears that Hooper did not communicate with the company that he proposed to buy on its account; it knew nothing about it for seventeen months, and he took the title to himself. In such a case as that there can be no application of the ordinary principles of agency or trust. *426 When a person does not purport ■ to act for a principal but buys in his own name, the principal cannot afterwards adopt the transaction. Of course, if he uses the money of his principal a court of equity would fasten upon the transactions, in behalf of the principal, a constructive trust. But Hooper did not use the money of his alleged principal; whatever agreement he made with Balloch he made in his own name and, upon its face, for his own benefit. We do not perceive any way in which the principal could claim to adopt that arrangement or in which he should be bound by any terms which Hooper had entered into. The transaction did not purport to be in behalf of the principal, and the latter’s means were not engaged or used at that time. We cannot, therefore, impress upon it the character of a trust or regard it as an act of agency which might be afterwards ratified.
It results that the insurance company was a stranger to the contract between Balloch and Hooper. It is not shown that it was even aware of the terms of the contract; all that it did was to release its original trust from Balloch and take Hooper as the debtor, which might well be done because the land was bound for the whole of the debt. Hooper took the property from Balloch subject to its being swept away from him by a foreclosure of that trust. In such a situation he undertook to become personally liable for the debt by giving the note for $71,000.
We do not perceive that there is a legal or equitable connection established with the insurance company so as to show a trust on its part for the benefit of Balloch. If that is the case it is entirely immaterial whether these houses cost an extravagant and even a fraudulent price or not. That does not concern Balloch; it is a matter which lay between Hooper and the insurance company. Hooper is a principal, and if he borrowed $20,000 for this purpose unnecessarily, and unnecessarily expended it, or even was *427 guilty of fraud, it was fraud against the insurance company. The insurance company does not claim an absolute title, it claims only a lien for its advances and it is only to be protected to that extent. That leaves the question of the right to redeem between Balloch and Hooper and as between them, we think it quite clear that Hooper took this as a security and not as an absolute deed. Balloch, then, as the owner of the equity of redemption, will have to redeem, as the transaction was made between Hooper and the insurance company, which, according to- the auditor’s report, will require $52,000. It may be that Balloch has suffered a wrong, but we cannot do anything more than to allow him to redeem the property at that rate.

The decree below is affirmed.